JS 44   (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
George Comfort & Sons, Inc.
200 Madison Avenue
New York, NY  10016

**(b)** County of Residence of First Listed Plaintiff   New York County
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Howard Rothenberg & Associates       Clausen Miller
345 Wyoming Avenue, Suite 210        28 Liberty Street, 39th Floor
Scranton, PA  18503 || (570)207-2889    NY, NY 10005 || (212)805-3900

## DEFENDANTS
Worth and Company, Inc.
6263 Kellers Church Road
Pipersville, PA  18947

County of Residence of First Listed Defendant   Bucks County
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)
Unknown

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                              and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

### CONTRACT
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

### REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☒ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

**PERSONAL INJURY**
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

### PRISONER PETITIONS
- ☐ 510 Motions to Vacate Sentence
**Habeas Corpus:**
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

### FORFEITURE/PENALTY
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

### LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

### IMMIGRATION
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus - Alien Detainee
- ☐ 465 Other Immigration Actions

### BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

### SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC § 1332
Brief description of cause:

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $  Unliquidated

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE
07/11/2016

SIGNATURE OF ATTORNEY OF RECORD

### FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GEORGE COMFORT & SONS, INC.**<br>200 Madison Avenue<br>New York, NY 10016<br><br>                Plaintiff<br><br>-against-<br><br>**WORTH AND COMPANY, INC.**<br>6263 Kellers Church Road<br>Pipersville, PA 18947<br><br>                Defendant | CIVIL ACTION – LAW<br>JURY TRIAL DEMANDED<br><br>NO.: |

## COMPLAINT

Plaintiff, George Comfort & Sons, Inc. (hereinafter referred to as "Plaintiff" or "COMFORT"), by and through its attorneys, Howard Rothenberg & Associates and Clausen Miller P.C., upon information and belief hereby alleges the following:

### I. PARTIES & JURISDICTION

1.     At all relevant times, COMFORT was a foreign business corporation, duly organized and existing under the laws of the State of New York, with a principal place of business located at 200 Madison Avenue, New York, NY 10016.

2.     At all relevant times, COMFORT was duly registered with the Secretary of the Commonwealth of Pennsylvania, and conducted business in the County of Philadelphia, Commonwealth of Pennsylvania.

3.     At all relevant times, COMFORT owned, managed and/or operated certain real and personal property located at 2607 Rhawn Street, Philadelphia, PA 19152, also known as the Smylie Times Building (hereinafter referred to as "Premises").

1

403502.1

4. At all relevant times, Defendant WORTH AND COMPANY, INC. (hereinafter referred to as Defendant or "WORTH"), was a domestic business corporation, duly organized and existing under the laws of the Commonwealth of Pennsylvania, and with a principal place of business located at 6263 Kellers Church Road, Pipersville, PA 18947.

5. At all relevant times, WORTH performed certain work at the Premises on behalf of COMFORT, pursuant to written agreements (copies of which are attached hereto and marked Exhibits "A" and "B"), which work and agreements are the subject of this litigation as set forth in detail below.

6. Jurisdiction of this Honorable Court is premised upon Diversity of Citizenship as the parties are citizens of different states and the amount in controversy is in excess of the Court's jurisdictional limits. Venue is proper in this Court as the acts giving rise to this claim all occurred within the Eastern District of Pennsylvania.

## II. FACTUAL ALLEGATIONS

7. The Premises, owned and operated by Plaintiff, was and is a five (5) story, Class B, office building.

8. On or about April 10, 2014, WORTH provided a written quote, number 60778 (hereinafter referred to as "Quote"), to COMFORT proposing to perform certain work including replacement of a water cooler air handler (hereinafter "Air Handler Project"), at the Premises. A true and accurate copy of the Quote is annexed hereto and incorporated herein as Exhibit "A".

9. On or about April 15, 2014, COMFORT accepted the terms of the Quote and in doing so hired WORTH to complete the Air Handler Project at the Premises. See Exhibit "A".

10. On or about April 15, 2014, COMFORT issued a Building Service Agreement (hereinafter "Agreement") in connection with the Air Handler Project at the Premises setting

2

403502.1

forth the Terms and Conditions applicable to the Air Handler Replacement Project. A true and accurate copy of the Agreement is annexed hereto and incorporated herein as Exhibit "B".

11. On or about July 19, 2014, at approximately 10:00 a.m., WORTH by and through its agents, servants and/or employees was engaged in the Air Handler Project at the Premises.

12. While engaged in the Air Handler Project and replacement of certain HVAC units and/or associated piping at the Premises, WORTH, by and through its agents, servants and/or employees, allowed water to leak out of the units, chiller and/or piping and into the main energized electrical bus duct, which was located immediately behind and in the immediate vicinity of the chiller at the Premises.

13. As a result of the water entering the bus duct, arcing and/or shorting occurred (hereinafter referred to as the "Arcing event"), the bus duct was heavily damaged and power was lost to the entire Premises.

14. As a result of the Arcing Event and the loss of power to the Premises, COMFORT suffered a significant financial loss, including property damage to the buss duct and emergency mitigation costs and/or repairs.

15. COMFORT has requested payment from Defendant for these damages, which Defendant has refused and/or failed to provide.

## AS AND FOR A FIRST CAUSE OF ACTION
## IN NEGLIGENCE AGAINST DEFENDANT

16. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs numbered "1" through "15" with the same force and effect as though fully set forth herein.

17. Defendant owed a legal and common law duty to COMFORT not to cause an arcing event within the Premises.

3

403502.1

18.    Defendant owed a legal and common law duty to COMFORT to perform the Air Handler Project in a reasonably careful and prudent manner so as to not cause damage to the Premises.

19.    Defendant owed a legal and common law duty to COMFORT to exercise reasonable care in execution of its duties at the Premises.

20.    Defendant owed a legal and common law duty to COMFORT not to cause a water leak at the Premises.

21.    Defendant, by and through its agents, servants and/or employees, breached the aforementioned duties including, but not limited to, the following:

a. Failing to drain the chiller, pipes and/or units before removing them;

b. Failing to take steps to protect the bus duct from damage;

c. Failing to prevent water from leaking into the bus duct as a result of its work;

d. Failing to be aware of the critical building infrastructure in the area of its work;

e. Failing to protect critical building infrastructure in the area of its work;

f. Failing to warn Comfort that its work might impact the bus duct;

g. Failing to recognize the risk of water damage to the bus duct resulting from its work;

h. Failing to take steps that a reasonable and prudent mechanical contractor would take to prevent damage to the Premises;

i. Failing to take steps that a reasonable and prudent HVAC contractor would take to prevent damage to the Premises;

j. Failing to take steps that a reasonable and prudent plumbing contractor would take to prevent damage to the Premises; and,

k. Otherwise negligently, carelessly and/or recklessly failing to exercise reasonable and prudent care in connection with the Air Handler Project; and,

l. In other ways as yet unknown but to be learned in the course of discovery.

22. Defendant, by and through its agents, servants and/or employees, breached the aforementioned duties by negligently, carelessly and/or recklessly failing to exercise due or reasonable care under the circumstances then and there existing at the Premises.

23. As a direct and proximate result of the foregoing negligent, careless and/or reckless acts and/or omissions by Defendant, by and through its agents, servants and/or employees, Defendant caused an Arcing Event and a power outage at the Premises, thereby damaging the Premises and resulting in significant financial loss to COMFORT.

24. Plaintiff will also rely upon *res ispa loquitur*.

25. The damages suffered by COMFORT, do not ordinarily occur in the absence of someone's negligence.

26. The damages suffered by COMFORT were not due to any voluntary action and/or contribution on the part of COMFORT.

27. As a direct and proximate result of Defendant's negligence, carelessness and/or recklessness, Plaintiff sustained damages.

WHEREFORE, Plaintiff, GEORGE COMFORT & SONS, INC., demands judgment against Defendant, WORTH AND COMPANY, INC., for an amount in excess of the Jurisdictional Limits of this Court, together with interest, legal fees, costs, expenses, disbursements and such other and further relief as the Court deems proper.

403502.1

## AS AND FOR A SECOND CAUSE OF ACTION IN GROSS NEGLIGENCE, RECKLESSNESS AND/OR WILLFUL AND WANTON MISCONDUCT AGAINST DEFENDANT (PUNITIVE DAMAGES)

28.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "27" with the same force and effect as though fully set forth herein.

29.    Defendant, by and through its agents, servants and/or employees, knew or should have known that its Air Handler Project at the Premises could result in the loss of life, limb and/or property, and a high degree of danger was present.

30.    Defendant, by and through its agents, servants and/or employees, knew or should have known that its duties owed to Plaintiff, to properly and safely conduct its Air Handler Project were required to be beyond that of ordinary care.

31.    Defendant, by and through its agents, servants and/or employees, knew or should have known that any departure from ordinary care could result in the loss of life, limb and/or property.

32.    Despite all the knowledge held by Defendant, by and through its agents, servants and/or employees, it intentionally, willfully, grossly negligently, wantonly and/or recklessly performed its Air Handler Project without giving due consideration to the risks to the Premises, causing the Arcing Event and power outage.

33.    In light of the above, Defendant's actions were highly unreasonable, and its conduct an extreme departure from the requisite standard of care, willful, wanton, grossly negligent and reckless.

6

403502.1

34.     Defendant did not act out of mere mistake resulting from inexperience, excitement, confusion, thoughtlessness, inadvertence or simple inattention.

35.     Defendant's actions, as aforesaid, by and through its agents, servants and/or employees, were reckless and were performed with conscious disregard for the safety of life and property so as to shock the conscience of a reasonable person and therefore exposes the Defendant to an award of Punitive Damages.

36.     As a direct and proximate result of Defendant's, by and through its agents, servants and/or employees, gross negligence, recklessness and/or willful and wanton misconduct, Plaintiff sustained damages.

WHEREFORE, Plaintiff, GEORGE COMFORT & SONS, INC., demands judgment against Defendant, WORTH AND COMPANY, INC., for an amount in excess of the Jurisdictional Limits of this Court, together with interest, legal fees, costs, expenses, disbursements and such other and further relief as the Court deems proper.

## AS AND FOR A THIRD CAUSE OF ACTION IN
## BREACH OF CONTRACTAGAINST DEFENDANT

37.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "36" with the same force and effect as though fully set forth herein.

38.     Defendant entered into an agreement and/or contract with Plaintiff, wherein it contractually agreed and had a contractual duty to properly perform the Air Handler Project the Premises.

39.     Defendant entered into an agreement and/or contract with Plaintiff, wherein it contractually agreed and had a contractual duty to properly supervise, monitor, inspect, direct and/or consult, regarding the Air Handler Project at the Premises.

7

403502.1

40.     Defendant, by and through its agents, servants and/or employees, breached its contractual relationship and duties, by failing to properly perform the Air Handler Project the Premises, causing a condition to exist which damaged the Premises and Plaintiff's property.

41.     Defendant, by and through its agents, servants and/or employees, breached its contractual relationship and duties, by failing to properly supervise, monitor, inspect, direct and/or consult, regarding the Air Handler Project at the Premises, causing a condition to exist which damaged the Premises and Plaintiff's property.

42.     Defendant's acts and/or omissions, on its own and/or through its employees, agents, servants and/or representatives, which caused the Arcing Event, were a breach of Defendant's duties and obligations under the contract and/or agreement with Plaintiff.

43.     In addition to the above-referenced breaches of contract, Defendant, by and through its agents, servants and/or employees, breached certain express contractual obligations including, but not limited to:

   a. All services to be provided in a "first class manner";

   b. Contractor to fulfill its obligations in a professional manner and to the satisfaction of Owner and Owner's Agent;

   c. Services to be performed in a safe, good and workmanlike manner and to be free from defects;

   d. Worth's insurance policies to name Owner Parties as an additional insured;

   e. Worth's insurance policies to be considered primary; and,

   f. Work to include "disconnect, *safe off* and remove existing cool water piping".

403502.1

44.     Defendant's acts and/or omissions, on its own and/or through its employees, agents, servants and/or representatives, which caused the Arcing Event, were a breach of Defendant's duties and obligations under the contract and/or agreement with Plaintiff.

45.     As a direct and foreseeable result of Defendant's breach of its contract and/or agreement with Plaintiff, Plaintiff sustained damages.

WHEREFORE, Plaintiff, GEORGE COMFORT & SONS, INC., demands judgment against Defendant, WORTH AND COMPANY, INC., for an amount in excess of the Jurisdictional Limits of this Court, together with interest, legal fees, costs, expenses, disbursements and such other and further relief as the Court deems proper.

## AS AND FOR A FOURTH CAUSE OF ACTION IN BREACH OF EXPRESS AND IMPLIED WARRANTIES

46.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "45" with the same force and effect as though fully set forth herein.

47.     Defendant, by and through its agents, servants and/or employees, made express and implied warranties, concerning its performance Air Handler Project the Premises.

48.     Defendant, by and through its agents, servants and/or employees, made express and implied warranties, concerning its performance of the Air Handler Project related to the supervision, monitoring, inspection, direction and/or consulting regarding the Air Handler Project the Premises.

49.     Defendant's representations, warranties and guarantees were part of the basis for its retention by Plaintiff.

50.     Defendant breached its express and implied warranties by failing to: perform all tasks required of it pursuant to the pertinent contracts and/or agreements; comply with safety

9

403502.1

standards, safety codes and building codes; satisfy all appropriate industry standards and guidelines; and in general acting in such a negligent, careless and/or reckless manner so as to evince a complete disregard for the safety of the property of others, including, but not limited to the Plaintiff.

51.     Defendant breached its express and implied warranties when it negligently, carelessly and/or recklessly performed its activities related to the Air Handler Project at the Premises.

52.     Defendant breached its express and implied warranties when it negligently, carelessly and/or recklessly performed its activities related to the supervision, monitoring, inspection, direction and/or consulting regarding the Air Handler Project at the Premises.

53.     Defendant breached its express and implied warranties when the services performed were not performed in a safe, good and workmanlike manner and were not free from defects.

54.     As a foreseeable result of the aforementioned breaches of express and implied warranties by Defendant, Plaintiff incurred extensive damages.

WHEREFORE, Plaintiff, GEORGE COMFORT & SONS, INC., demands judgment against Defendant, WORTH AND COMPANY, INC., for an amount in excess of the Jurisdictional Limits of this Court, together with interest, legal fees, costs, expenses, disbursements and such other and further relief as the Court deems proper.

403502.1

Respectfully submitted,

**HOWARD ROTHENBERG & ASSOCIATES**

BY: _____

Howard A. Rothenberg, Esquire
Attorney I.D. #38804
Attorney for the Plaintiff
345 Wyoming Avenue, Suite 210
Scranton, Pennsylvania 18503
Phone (570)207-2889
Fax (570)207-3991
Email: hrlaw01@gmail.com

-and-

**CLAUSEN MILLER P.C.**

BY: _____

Robert A. Stern, Esq. (not admitted in PA)
Marc P. Madonia, Esq. (not admitted in PA)
28 Liberty Street, 39th Floor
New York, NY 10005
(212) 805-3900

11

403502.1



# WORTH & COMPANY, INC

April 10, 2014

Quote #: 60778

George Comfort & Sons, Inc.
1A Quakerbridge Plaza
Hamilton, NJ 08619

Attention: Ken Lucas

Reference: Smylie Times Building: Water Cooled Air Handler Replacement Proposal

Worth & Company, Inc. is pleased to present this proposal for the above referenced project.
Our price is based on a request for pricing at the above referenced project location.
The following is our scope of work.

HVAC Scope of Work:
Disconnect, safe off, remove low voltage control wiring connections and power wiring connections from two (2) existing water cooled air handling units serving the first floor
Disconnect, safe off, remove existing cool water piping and condensate water piping from two (2) existing water cooled air handling units
Disassemble and remove (from building) two (2) existing water cooled air handling units
Provide and install two (2) water cooled indoor air handling units, by Carrier to match existing
Provide and install galvanized sheet metal duct work connections from new equipment to the existing duct system
Provide and install cooled water piping and condensate water piping to the new equipment from the existing system
Provide and install power wiring and control wiring connections from the new equipment to the existing system
Provide start up and one year warranty for the new HVAC equipment only
Provide the required rigging and handling of the new HVAC equipment

HVAC Scope of Work Pricing:
Sixty Seven Thousand Dollars.........................................................................$67,000.00

Exclusions:
No building permits, No building shutdown / drain, No engineered / sealed drawings, No steel work, No concrete pad work, No block and / or concrete work, No new power wiring, No roof work, No plumbing, No gas piping

Thank you for the opportunity to provide you with a quote for this project. If you have any questions, do not hesitate to contact me at any time.

Acceptance to proceed signature: _W Mers_____ Date: _April 15 2014_

_use Job # 1294 on all Invoices_

Sincerely,

_Fran P. Cutter_

Fran P. Cutter
Account Executive
(215) 834-3827

--- *Page 1 of 1* ---



PLAINTIFF'S
EXHIBIT
A

GCSI MASTER 8/29/2013

## BUILDING SERVICES AGREEMENT

Date:  __April 15,_, 2014

OWNER:

SMYLIE AND  BOULEVARD LP
c/o George Comfort & Sons Inc
200 Madison Ave
New York NY 10016

CONTRACTOR:

Worth & Company Inc
6263 Kellers Church Road
Pipersville PA, 18947
267-362-1100

BILL TO/OWNER'S AGENT:

SMYLIE AND  BOULEVARD LP
c/o George Comfort & Sons Inc
200 Madison Ave
New York NY 10016
As Agent for Owner
Attn:

BASIC DESCRIPTION OF SERVICES:     REPLACE WATER COOLED hvac UNIT
Ground Floor MER

COMMENCEMENT DATE:                 April 15th 2014

EXPIRATION/COMPLETION DATE:

PRICE AND PAYMENT TERMS:           See Exhibit A

OTHER TERMS/ATTACHMENTS:           See Exhibit A

Contractor has read and hereby acknowledges the Terms and Conditions attached to this Building Services Agreement (this "Agreement") and made a part hereof by signing below and transmitting this Agreement to Owner's Agent electronically.

OWNER'S AGENT:                                      CONTRACTOR:

_George Comfort & Sons Inc_
As agent for SMYLIE AND  BOULEVARD LP

By: _____                      By:_____
Print Name: William Mersereau                       Print Name:
Print Title: Director Of Engineering                Print Title:

Job # 1294



PLAINTIFF'S EXHIBIT B

## Terms and Conditions to Building Services Agreement

1. <u>Capitalized Terms.</u> Capitalized terms used in these Terms and Conditions to Building Services Agreement (the "Terms and Conditions") and not otherwise defined shall have the meaning ascribed to such terms on the first page of this Agreement.

2. <u>Scope of Services.</u> Owner's Agent, solely in its capacity as agent for and on behalf of Owner, hereby retains Contractor to perform and furnish the work, labor, materials and/or services described herein and/or described in <u>Exhibit "A"</u> attached hereto and made a part of this Agreement (the work, labor, materials and/or services described in <u>Exhibit "A"</u> are collectively referred to herein as the "<u>Services</u>"). Contractor hereby agrees to timely perform the Services, subject to and in accordance with all of these Terms and Conditions stated herein. All Services shall be rendered as set forth in <u>Exhibit "A"</u>. Subject to Section 5.2 hereof, all Services shall be performed by skilled, duly licensed tradesmen or employees, in a first class manner and minimizing, to the maximum extent feasible, disruptions to the operation of the Building or Buildings at which the Services are being performed (the "Building(s)") and the Building(s)'s occupants. Contractor shall not directly or indirectly employ, or permit the employment of any contractor, subcontractor mechanic or laborer in the Building(s) if such employment interferes or causes any conflict with other contractors, mechanics or laborers engaged in the operation of the Building(s).

3. <u>Agreement Term.</u> The term of this Agreement (the "Term") shall commence on the Commencement Date and shall continue in full force until the Expiration/Completion Date, unless the Term sooner terminates pursuant to the terms of this Agreement. Notwithstanding the expiration of the Term, the Term shall, upon expiration, automatically renew on a month-to-month basis upon the same payment terms and Terms and Conditions set forth herein, until terminated by either party upon twenty-five (25) days prior written notice.

4. <u>Payment.</u>

4.1 Owner's Agent, on behalf of Owner, shall pay Contractor out of funds received from the Owner for the Services according to the prices and payment schedule set forth in <u>Exhibit "A"</u> attached hereto and made a part hereof. To receive payment hereunder, Contractor shall furnish Owner's Agent with an itemized statement of all charges, including sales tax, separating, among other items, charges for labor and materials, for which payment is sought. If requested, Contractor shall furnish Owner's Agent with vouchers, receipts, affidavits or other proof which may reasonably be requested or required by Owner's Agent to support Contractor's charges for labor and material furnished by subcontractors and suppliers. Contractor acknowledges and agrees that Owner's Agent shall have no obligation to make payments to Contractor except out of funds received from Owner and that Contractor must look solely to Owner and Owner's interest in the Building(s) for payment.

4.2 Contractor shall pay all local, state and federal taxes, including federal income, social security and medicare taxes, New York income, self-employment, sales, use, consumer, excise and similar taxes, and unemployment and employee withholding, as may be applicable, in connection with the Services. Contractor shall obtain or maintain a valid New York State sales tax permit. Contractor shall file the necessary return(s) with the State of New York and all agencies related thereto as required by the rules and regulations of the State of New York and with such return(s) shall remit to the State of New York all applicable income, self-employment, sales, use, consumer, excise and similar taxes. Contractor's request for payment shall include and set forth New York sales, use, consumer, excise and similar taxes as may be applicable.

5. <u>Standard of Performance.</u>

5.1 Contractor shall fulfill its obligations hereunder by reasonable means, in a professional manner, to the satisfaction of Owner and Owner's Agent.

5.2 Contractor represents and warrants that the Services shall be performed in a safe, good and workmanlike manner, in accordance with all applicable Laws (as hereinafter defined) and shall be free from defects. This warranty shall be effective during the Term (as the same may hereafter be extended), and for at least one (1) year after completion of any Services performed hereunder. This Section 5.2 and the warranty set forth herein shall survive the expiration or sooner termination of this Agreement and the completion of the Services.

5.3 Contractor shall supervise and direct the Services, using its best skill and attention, and shall be solely responsible for all labor, materials, equipment, and other facilities used to accomplish the performance of the Services and any taxes and/or expenses incurred in connection with the Services.

5.4 Contractor acknowledges that the personnel assigned to the Services by Contractor constitute a material inducement to Owner's Agent's selection of Contractor for the Services and such individuals will be considered key personnel ("Key Personnel"). In the event any Key Personnel are unable to perform their respective duties by reason of, but not limited to, death, disability or termination of employment, Owner's Agent, on behalf of Owner, will be entitled, in Owner's Agent's sole and